IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2005

**STATE OF TENNESSEE v. DONALD MULLINS**

**Direct Appeal from the Criminal Court for Putnam County**
**No. 03-0810     Leon Burns, Judge**

_____

**No. M2005-00713-CCA-R3-CD - Filed January 30, 2006**

_____

The defendant appeals his conviction for theft of property, contending that the evidence failed to establish that he took the property without the owner's effective consent. However, upon review, we conclude that the evidence was sufficient to support the verdict and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Edwin G. Sadler, Cookeville, Tennessee, for the appellant, Donald Mullins.

Paul G. Summers, Attorney General and Reporter; Jane L. Beebe, Assistant Attorney General; William Edward Gibson, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The defendant, Donald Mullins, was convicted by a Putnam County jury of one count of theft of property between $1,000 and $10,000 (a Class D felony), and was sentenced as a Range I standard offender to two years, all suspended to probation. The defendant now appeals to this court challenging the sufficiency of the evidence to support the verdict. Upon thorough review, we affirm the judgment.

At trial, the victim, Frankie Frills, testified that he buys and sells horses and cattle and that he has conducted business at Wilson's Horse and Mule Barn (hereinafter Wilson's) in Cookeville, Tennessee, for approximately twelve years. He recalled that he attended a sale at Wilson's in May 2003, at which time he sold several horses and purchased twenty-two horses. At approximately 1:30

a.m., the victim finished loading some of the horses and asked his part-time employee, Chris Grabbit, to load the remainder because the victim was not feeling well and was ready to go home. The victim explained that, although he paid Grabbit one half of the profit as payment for his services, he and Grabbit were not partners on the horses.

The following day, the victim met with Grabbit to "settle up" and learned that the defendant, Donald Mullins, had taken two of the victim's horses, one that was purchased in Lewisburg for $450,[1] and the other that was purchased at Wilson's on the previous night for $800. Upon receiving this information, the victim called the defendant, whom he knew previously from his dealings at Wilson's; informed him that the horses were, in fact, his property; and demanded payment. While the defendant acknowledged the victim's ownership of the horses, he stated that he took the horses because Grabbit owed him a debt. Nonetheless, the defendant instructed the victim to have Grabbit accompany him to a sale the following week in Cookeville where the defendant would pay the victim for the horses.

Despite this assurance, when the victim and Grabbit arrived at the Cookeville sale, they discovered that the defendant was not there. When the victim called the next day to inquire as to why the defendant was not present, the defendant responded that he "didn't have any business at the sale." The victim phoned the defendant at least two more times demanding payment for the horses, but never received payment or any explanation of the defendant's inaction. When the victim saw the defendant in July 2003, the victim approached him in a parking lot and again requested payment for the horses. The defendant responded that he would not pay the victim.

On cross-examination, the victim stated that Grabbit had been working for him for approximately three months at the time of the incident. He indicated that he was unaware of any occasion when Grabbit sold horses in his absence. The victim testified that he did not fire Grabbit or file charges against him because the defendant "took the horses off of the trailer without [his] consent and without [Grabbit's] consent." The victim stated that the defendant never told him that he took the horses to satisfy a $1200 debt owed by Grabbit to the defendant. Although he admitted that the horses were not registered or branded, he noted that the defendant knew the horses were his after their conversation on the day following the incident.

Grabbit testified that he traded horses for the victim for approximately one year. He further stated that he and the victim owned the horses together and that he took half of the profit or loss from each sale. Grabbit stated that on the night in question, the victim left with several horses shortly after the sale, leaving Grabbit to load the remainder. He testified that he let the defendant have two horses because he owed the defendant a debt and did not have any money to satisfy it. He further stated that he told the victim about the incident the following day.

---

[1] The record reflects that the victim attempted to sell this horse at Wilson's but, because it did not bring the desired profit, it was deemed a "no sale."

On cross-examination, Grabbit testified that he has sold horses for the victim on several occasions, including in the victim's absence. He stated that he had the right to sell the horses and that he was experienced in the business. Grabbit indicated that he gave the defendant two horses and received $100 in exchange. He further testified that he intended to pay the victim $1200 but that he broke his leg and was unable to pay him.

On redirect examination, Grabbit testified that he told the victim that the defendant took the horses in exchange for his debt. He reiterated that the defendant "wanted his money or something" and that he gave the defendant the victim's horses because he did not have the money to pay the debt. Finally, Grabbit testified that the defendant did not write him a receipt showing that the debt had been paid.

Michael Collins testified that he lives in Newburg, West Virginia, and that he trades horses as a profession. He stated that he was present at Wilson's on the night of the incident and that he heard the conversation between the defendant and Grabbit. Collins recalled that the defendant approached Grabbit and spoke with him about the debt, and that Grabbit gave him the first horse which had been purchased for $500. He stated that Grabbit subsequently acted in an "obnoxious" manner and that the defendant told Grabbit that he wanted the debt to be paid in full. At that time, Grabbit offered a second horse, valued at $800, to the defendant. The defendant took the horse, gave Grabbit $100, and said, "Now we're even. I don't owe you nothing, you don't owe me nothing." Collins indicated that the defendant was not acting in a threatening manner. On cross-examination, he reiterated that the two horses were transferred separately.

Jesse Mullins, the defendant's son, testified that he was present during the incident in question. He stated that Grabbit owed the defendant $1200, and that he transferred two horses to the defendant, valued at a total of $1300. He further stated that the defendant gave Grabbit $100 in exchange.

As the final witness at trial, Roy L. Farris testified that he had been employed at Wilson's for seven years and that he knew the defendant, the victim, and Grabbit. He stated that Grabbit had previously sold the victim's horses in his absence and that the horses had been checked in under both the victim's name and Grabbit's on prior occasions. Farris testified that, on the night in question, he observed the defendant and Grabbit looking at horses and heard the defendant say that he would "be even" when he left that night. He saw the defendant place money in Grabbit's shirt pocket but indicated that the defendant was not acting in a threatening manner.

On cross-examination, Farris testified that he has not seen Grabbit at Wilson's recently because he is no longer welcome there due to his outstanding debts. He indicated that he knew the victim "very well" and was aware that Grabbit worked for him. On redirect examination, Farris testified that the defendant is and has always been welcome at Wilson's. Following the presentation of proof, the jury returned a verdict of guilt on the charge of theft of property between $1000 and $10,000.

Analysis

The defendant's sole contention on appeal is that the evidence was insufficient to support the verdict. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The offense of theft is committed when, "with the intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. At issue in the present case is whether the evidence presented was sufficient to prove that the defendant took the horses without the effective consent of the victim. Specifically, the defendant avers that "the [d]efendant took possession of [the victim's] horses by the apparent assent of Frills' agent and partner, Grabbit, who was legally authorized by Frills to engage in transactions involving horses."

Although Grabbit's working relationship with the victim was disputed at trial, the jury ultimately accredited the testimony of the victim, who testified that Grabbit was not an investor in the horses; that he was paid half of the profit as payment for his services; and that he did not sell horses in the victim's absence. It is the sole province of the jury to determine the credibility of witnesses and to resolve all factual issues. Therefore, taking the evidence in the light most favorable to the State, we conclude that the testimony of the victim was sufficient to support the defendant's

-4-

guilt, based upon the general understanding that Grabbit was an employee of the victim rather than a co-owner of the horses with authority to act on the victim's behalf.

Furthermore, even if the defendant initially believed that Grabbit had the authority to transfer the horses, he was certainly advised otherwise when the victim phoned the defendant the following day to request payment. The victim testified that the defendant acknowledged the victim's ownership of the horses during their conversation and made arrangements to pay him the following week. The defendant, however, persisted in failing to pay the victim for the horses despite numerous attempts to collect payment. Therefore, the defendant showed a continuing intent to exercise control over the horses without the owner's consent. For these reasons, we conclude that sufficient evidence was presented to convict the defendant of theft of property between $1000 and $10,000.

### Conclusion

The judgment of the Putnam County Criminal Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE